# TEE v. NOBLE.

## (135 N. W. 769.)

**Dismissal — counterclaim and cross bill — voluntary dismissal.**

1. A plaintiff cannot avoid meeting the issues presented by a counterclaim or cross bill, by dismissing his complaint, or so much thereof as relates to said counterclaim or cross bill. Such cross bill or counterclaim, however, must be properly pleaded.

**Pleading — counterclaim.**

2. A counterclaim must be able to stand by itself and be complete in itself, and must be separately stated.

23 N. D.—15.

**Taxation — adverse claims — certificate of tax sale.**

    3. In order to maintain an equitable action or counterclaim to set aside a tax certificate on account of an unlawful combination to stifle and prevent competition at the sale, equity must be done by first paying or offering to pay the amount due to the county at the date of such sale. (Following Noble v. McIntosh, ante, 53, 135 N. W. 663). In this respect a distinction is made between an equitable action and an action brought in statutory form under §§ 7519 and 7222 of the Revised Codes of 1905, to determine adverse claims to real property, in which latter case the court may decree the payment as a condition of granting relief, without the necessity of a specific offer to do equity.

**Principal and agent — foreclosure of mortgage — implied authority.**

    4. An agent who is authorized to foreclose a mortgage and collect the amount due upon the same has no implied authority to consent to the assignment of the mortgage to another person on payment of the principal and interest, especially where there is a controversy over taxes due and unpaid.

Opinion filed February 26, 1912. Rehearing denied April 24, 1912.

Appeal by defendant from a judgment of the District Court for Bottineau County, *F. E. Fisk*, J., in plaintiff's favor in an action to foreclose a mortgage.

Modified and affirmed.

This is an action to foreclose a mortgage on certain land in Bottineau county. In the original complaint an attempt was made to include with the mortgage debt the indebtedness due upon a certain tax certificate, which had been purchased by the mortgagee, and a decree of foreclosure was asked which should include both the amount due upon the mortgage and the amount due upon the tax certificate. The certificate was the same to cancel which the proceeding in the case of Noble v. McIntosh, ante, 53, 135 N. W. 663, which has been argued and decided at the October term of court, was brought; and the case mentioned and the one at bar are closely related. In his amended answer the defendant, Noble, as administrator of the estate of the mortgagor, alleged that the tax certificate was void on account of the fact that there had been no competitive bidding at the sale, and asked "that the said tax certificate be canceled as a cloud upon the defendant's title, and for such other and further relief as equity deems just." He also offered, in his pleadings, and in order to conserve said estate, to personally pay the

amount of $5,200 for an assignment to him, personally, of said mortgage, according to an alleged prior agreement, but not the amount claimed for taxes. The amended answer also failed to allege or to show any tender or offer to pay to the mortgagee or to the purchaser of the said tax certificate the amount of the taxes, which offer or tender this court, in the case of Noble v. McIntosh, before referred to, and in an equitable action against the holder of the certificate, decided was necessary in order to maintain an action for canceling or setting aside the certificate.

After the filing of the amended answer, the plaintiff moved to amend the complaint by striking out all of the paragraphs therein relating to the said tax certificate, and to amend the prayer for relief so that the judgment asked would include the amount of the mortgage debt and interest alone. This motion was granted, and although the case comes to us under the Newman law, defendant and appellant assigns the granting of this motion as error, and on the trial and against the objection of irrelevancy and incompetency and failure of inclusion within the issues, introduced evidence tending to show the tender to the mortgagee of the amount of his mortgage debt, with interest, and the fact of the collusion and conspiracy to defeat competition at the tax sale, and asked for a judgment canceling the said tax certificate and assigning the mortgage to him as such administrator. He maintains that the plaintiff should not have been allowed to strike from his complaint the allegations in regard to said tax certificate, as issue had been taken thereon in the answer, and insists that this court should decree a cancelation of the tax certificate, whereas the trial court merely recognized the mortgage. He also contends that the trial court erred in entering a deficiency judgment, as there is no evidence in the record that the plaintiff filed his claim with the administrator within the time allowed for the presentation of claims against the estate of the decedent. The correctness of the last contention, however, has been admitted by the respondent, and he consents to the entry of a judgment for the foreclosure of the mortgage merely, and waives his claim to the deficiency decree. The defendant, it will be noticed, did not ask for a satisfaction of the mortgage, but for an assignment of it to him for the reason that he was "paying $5,200 out of his own funds for the purpose of protecting the estate, and that it was his intention to hold said mortgage until such time as

the premises could be advantageously mortgaged to pay the said indebtedness, and until such time as the claim for taxes could be settled, adjusted, and adjudicated." He also alleged in his answer that prior to the foreclosure proceedings, he had made an agreement with Bowen & Adams, attorneys for the plaintiff, that said mortgage would be assigned to him for the sum of $5,200, and that no foreclosure proceedings would be instituted, and that the payment or adjustment of the taxes should not be necessary to such assignment. The trial court gave judgment of foreclosure for the sum of $5,385.70, the principal and interest upon the mortgage debt, with a deficiency decree, and from this judgment the defendant appeals.

*Noble, Blood, & Adamson,* attorneys for appellant.
*Bowen & Adams,* attorneys for respondent.

BRUCE, J. (after stating the case as above). The appellant is, no doubt, correct in his contention that after the filing of an answer containing a cross-bill or counterclaim, the plaintiff has no right to amend his complaint so as to escape taking issue thereon, provided such cross-bill or counterclaim is properly pleaded. It would be, perhaps, more correct to say that he can amend his complaint if he chooses, but that he cannot escape the issues presented by the counterclaim. We are of the opinion, however, that in this case a counterclaim was not properly pleaded. There was a prayer for the cancelation of the certificate, but nothing which would stand by itself as a counterclaim or as a cross-bill, and which did not need to be bolstered up, not merely by the remaining portions of the answer, but by the complaint in itself. (Code 1905, § 6860.) So, too, the counterclaim was lacking in defendant's failure to allege a willingness to do equity. This question has been decided in the recent case of Noble v. McIntosh, ante, 59, 135 N. W. 663, which we have before referred to, and that case is founded upon the prior decision of Powers v. First Nat. Bank, 15 N. D. 466, 109 N. W. 361. The rule, indeed, that in an equitable action a willingness to do equity must be pleaded and supported by proof, has been thoroughly established in this court; and in the recent case of Powers v. First Nat. Bank, supra, a clear distinction has been made between an equitable action technically speaking, and one which is brought under §§ 7519

and 7522 of the statute, to determine adverse claims. The case of State Finance Co. v. Beck, 15 N. D. 374, 109 N. W. 357, indeed, which is cited by counsel for appellant and which might seem to announce a different doctrine and to support the appellant's contention, was an action to determine adverse claims, and in the later case of Powers v. First Nat. Bank, to which we have just referred, was clearly distinguished. "A new rule," said Chief Justice Morgan, "is announced in this case, overruling previous cases in this court so far as the application of this equitable principle in actions between private parties . . . is concerned. Upon mature consideration we conclude that no sound distinction can be drawn between such actions and those against public officers that will warrant the application of this equitable principle in the one case and withholding it in the other. . . . In this case the plaintiff did not allege in the complaint a payment or an offer of payment of the taxes justly due. If the action be considered one solely to determine adverse claims, such an allegation is not necessary, as the statute prescribes a form of complaint for such cases. In such actions if it developes on the trial that taxes are justly due, the plaintiff should offer to pay them before equitable relief will be granted. In this case that was not done. . . . Hence, there is no ground for interference by a court of equity until the plaintiff himself shows a disposition to do equity." And, again, in another place in the opinion, he says: "The relief sought is equitable, hence equitable principles must be applied in the determination of the issues. The mere fact that the action is between private parties only is not enough to take it out of the rules applicable to equity cases. . . . The owner comes into a court of equity, asking that he be relieved from tax proceedings which he claims to be illegal. Before his prayer should be granted he should do equity himself, and reimburse the tax purchaser, and save the county from the burden of having to pay out the money received as taxes on plaintiff's land, which the latter does not claim not to owe."

We now come to a consideration of the question as to whether the offer of the defendant to pay into court the sum of $5,200 due under the mortgage, but not including the amount of the taxes, would preclude the entering of the judgment of foreclosure. We think that it did not. We find nowhere in the record any clear and satisfactory evidence of an agreement on the part of the plaintiff to assign the mortgage to

the administrator, V. B. Noble, upon the payment of the sum of $5,200, and without some such agreement we can see no foundation for any duty on the part of the plaintiff to assign the mortgage to him, even though a tender was made.   V. B. Noble, as an individual, was not a party to the action.   He was not a proper party defendant, and we find no record of his having intervened in the action, or of any right to so intervene. The only evidence, too, upon the subject of this alleged agreement is to be found in the testimony of Mr. Blood, who says that "in the fall of 1910 I called at Bowen & Adams's office.   I met Mr. Adams.   I first found out that they had the mortgage for collection.   In the conversation it was stated by him that he did not know whether an. assignment could be made of them or not, but that he would find out.   About a week later I called at the office, and Mr. Adams was not in, but Mr. Bowen was there.   I put the proposition up to him that I would pay the mortgage and the coupon note—pay the amount in full—if it could be arranged to get an assignment.   I thought this would be better, it being an estate mortgage, and would save the expense of going through court to get an order to mortgage, and also in regard to those taxes. Mr. Bowen said that that would be satisfactory, and that he would do it.   I did not see him again until the 1st day of December, when it was due, and I went there and asked him if he was ready to assign the mortgage, and offered to pay him myself.   He then stated that he could not deliver it until the full amount of the mortgage and taxes were paid. Of course that was all there was to it."   We do not see in this any agreement that would bind the plaintiff Tee.   It was clearly not a matter within the implied authority of the agent, and there is certainly no evidence in the record of any ratification of the agreement, if agreement it be, by the principal, or of any authority given by him for it.   Authority to collect a mortgage note is not authority to sell or assign it to some third person, especially when the principal at the same time has a claim or imagined claim for taxes due and unpaid.

The judgment of the District Court will be modified so as to strike therefrom all reference to and any judgment therein contained for a deficiency, and as so modified the judgment of the District Court will be affirmed.   Neither party will be allowed any costs or disbursements upon this appeal.